Our third case for this morning is Alcarez v. Akorn, and this is the appeal of Mr. Frank. So, Ms. St. John. May it please the court. My name is Anna St. John, and I represent Theodora H. Frank. In Walgreen, the circuit held the class action that yields fees for class counsel and nothing for the class is no better than a racket. It must end, this court said. This appeal involves the latest iteration of a class action that yields fees for class counsel and nothing for the class. It is a direct attempt to circumvent this court's law. Appellees and their counsel file meritless strike suits and leverage the class action device to unjustly enrich themselves. So let me just interrupt you, Ms. St. John, and say there may be all sorts of bad things about this device, but not every bad thing is redressable in court every time. So just to take a related example, Rule 23 of the Federal Rules of Civil Procedure was amended a few years back to bring attorneys' fees, actually the selection of the attorneys and on forward, much more under the control of the court. This case appears to be one of six, and I'm having so much trouble trying to figure out what's here. It was dismissed without prejudice. The attorneys have disclaimed on the record any interest in fees, so there's no money that's going to be taken out of ACORN for this particular, for the Alcarez case, for example, for the three that are before us, Alcarez, Harris, and Berg. I'm sure that Mr. Frank is very annoyed about this tactic, and there might be some other case in which we could examine whether this is really a derivative case or not. He seems to have sort of a free-floating offense that the class attorneys weren't behaving properly as fiduciaries for him, but I can't figure out what the concrete harm to him is from that since there's just a giant nothing here. So maybe you can help me make this concrete enough that it seems like the correct business of a court. Yes, Your Honor. The harm is in two parts. One, appellees and their counsel owed a fiduciary duty to Mr. Frank by virtue of filing a complaint. What is the damage at this point when there's no case, no fees, he could file a new lawsuit if he wanted to, he would have to surmount the business judgment rule and so forth against the corporation, but even if I agree with you that these people are just serial abusers of fiduciary duty, what is the harm to Mr. Frank right now? Other than just being offended, which I'm sure he is. The harm is the loss of the loyalty itself. Can you put a dollar sign on that? It's also the reduction. So I take that's a no since you moved right over to there's also. In this particular case, there's not a dollar sign. All right. Why is there not? My understanding was that $322,000 had been paid into the court's registry and is not being given back. Isn't that the loss? I mean, there's a separate question about who gets it, but that sounds like a concrete loss unless that money is being given back. That's correct, Your Honor. The money is not given back to Acorn. The merger has now fallen apart. The value of Mr. Frank's holdings have been reduced significantly. But we can't look at the value of his holdings. That's the derivative suit that you've disclaimed. Well, under Kaplan v. Rand and Robert F. Booth Trust v. Crowley, a shareholder who objects to the payment of attorney's fees by a corporation as compensation for attorneys representing the shareholders does have an interest in the payment of that fee. Let me ask you what's going on with the other three cases. Has the district court ruled on the motion to intervene in those three? The district court denied that motion, but is allowing us to submit an amicus brief with respect to whether disgorgement would be appropriate. If the judge has denied the motion to intervene in the three cases where the lawyers want the attorney's fees, why aren't those the three cases that you've appealed? Of course, I have some difficulty understanding how many cases we have because I thought they had been consolidated in the district court. We did try to consolidate briefing. We disagree with the district court's ruling below in those other three cases we have appealed. If we do get a remand in this case, it may make sense to ask the district court to wait. Let me go back. You say you have appealed, so you filed notices of appeal in the three cases where the plaintiff's lawyers want to keep the fees? In one of those cases, yes, Your Honor. That's the House case, right? Why are we hearing this case rather than that one? That was my question, too, in a nutshell. Why isn't everything that bothers you better presented in the House case because the attorneys want the money? We did ask for briefing to be consolidated in all of these appeals. We think that the harm to Mr. Frank's interests is a result of the racket in general. It's not just the retention of fees. You may think that, but the path to decision is significantly eased by going to that case. Maybe what you now want to do is brief that case and see what happens. We do intend to do that, Your Honor. That's number 18-3307 here, just for the record, the House v. Acorn case. But my look at the docket suggests it's in a very preliminary part of its life in this court. Yes, Your Honor. It was filed very recently. How recently? I believe within the past week or two. I don't have the date in front of me, but it's fairly recent. I will say, however, the district court committed errors of law that require reversal and remand in this case. And if we get further guidance in those other cases, it may be something that we use below. But here, the district court erred as a matter of law in finding Mr. Frank's motion to intervene moot. It wasn't moot because he could still obtain the relief he requested. Well, you're talking, I think, now about the injunction that he wants that looks like, in addition to the federal rules of civil procedure to me, an injunction that crafts a system under which truly estile mootness fees have to be approved in all cases by the district court. And so if the district court would evaluate the additional disclosures, the district court would decide whether they were worth it. If they were worth it, then maybe the district court would say yes to attorney's fees. If the district court thought that they were, as you allege, just needless papering to get a nuisance person to go away, the fees would be zero because the disclosures were worth zero. I mean, you want a whole administrative structure to be crafted by the district court. I guess for this case, you will recall probably that there is a whole huge side debate going on in the United States these days about whether an injunction in one case can have nationwide effect. So I'm not sure where you want to go with that, but it sounds like you may be on tricky ground. Well, thinking about where we are, the proposed injunction would effectively amend Rule 23E for these lawyers. And it would be an injunction, I gather, that runs against the lawyers rather than the litigants. That normally would be something you do in the rules. Is there a proposal pending before the Civil Advisory Committee or the Standing Committee to amend Rule 23E? Not to my knowledge, Your Honor. We believe the district court has the authority. I would think that Mr. Frank might be the one to make that proposal. The committees are very happy to take suggestions from the public. But a suggestion that a single federal district court issue an injunction that has the effect of amending one of the rules of civil procedure is, well, let's just say that's a breach. Well, Your Honor, we see a problem. Of course there's a problem. There's a problem. We're talking about what's the solution. What do you do about particular problems? Our proposal is this injunction. You know, it may be the case that this court suggests that district courts refer these cases to disciplinary proceedings. This is our effort to find a solution to the problem identified in Walgreens. Your Honor, you're not asking us to refer the plaintiff's lawyers to disciplinary proceedings. And as long as they're winning in the district court, that doesn't seem to be the right thing to do. The proposed injunction really is a proposal to amend Rule 23E. One part of your brief says that this set of fees violates the securities laws, in particular 78U4A6, which bars awards of fees that exceed the remit. Has any court considered whether that applies to suits filed but not certified as class actions? I can't identify a case today, something that we can certainly look into, but it was important to remember. I didn't ask that question. You could answer, I can't identify such a case today if you've done no research on that question. I'm asking whether you know. No, Your Honor. Okay, so research has not been done. I suppose one could read the language of that subsection to apply only to certified classes, as opposed to cases filed as class actions, and this hasn't been certified. That's correct. These fees also violate the catalyst theory. The problem is still that they're leveraging the class action device to obtain fees unjustly for themselves. Well, that's a different claim. That's an allegation that the plaintiff's lawyers have committed the tort of abusive process. Who would own that claim? Would it be Mr. Frank personally or the defendant? I think it could be the class members. That's what sounds like a derivative claim. There is no class, by the way. So you're putting us in this putative class zone from the day somebody files something on my own behalf and on behalf of others similarly situated. And what worries me about your position is that the trend of Supreme Court decisions has been to make that moment of certification an important one for when rights adhere in the unnamed members. There are all sorts of things pre-certification. And if it's enough to create a class just to file something that you say is a class, boy, would that turn a lot of law inside out. And so I guess what's happening, according to your view, you can correct me if I'm wrong, is that people represented by the plaintiff's firms here are filing putative class actions, knowing that it will never reach the certification point. But they somehow send the message to the defendant firms that they can make a big enough pest of themselves that it would be in the defendant firm's interest anyway to have this so-called mootness settlement, because otherwise we'll keep filing motions against you. I don't know. I'm just trying to construct why the firms are agreeing to these, why the defendant firms are agreeing to these payments to the tune of $300-some-thousand. Well, to avoid having the merger held up. They want to get the transaction completed. And if it were simply an individual plaintiff, they might be able to offer a proof of judgment to get rid of the claims more quickly. And so the attorneys need the class action device, at which point the fiduciary duty attaches. They agree to that. They have a fiduciary duty to the shareholder class members. And they use that to seek these six-figure fees. Okay. Well, if you'd like to save a little bit of rebuttal time, this might be a good moment. Yes, Your Honor. Thank you. Thank you. Ms. Trapodi. Good morning, Your Honors. May it please the Court. Well, Ms. Trapodi, perhaps I should begin by asking you, since we did not ask Ms. St. John, about the actual ground on which the district court decided this case, which is that it's moot. Now, our proposed intervener says he wants an injunction. And the district court said, I'm not going to issue one. Therefore, the case is moot. How can that be right? Your Honor, I think the district court said that the case was moot, first based on the fact that in the three cases that are currently pending before Your Honors, we have disclaimed any right to the fees. Well, what is the case? Hasn't six cases been filed? I thought they'd been consolidated. Your Honor, the six cases were consolidated. They were consolidated later this fall. So there's this pot of money. Somebody is going to get it. The district court has to decide who. It might not be any of the plaintiff's lawyers in these three appeals. But it's very hard to see the case as moot, unless the money has already gone back to the person who put it into the pot. Otherwise, the judge has got to figure out what to do with it. But I'm interested in the district judge's second ground, which is it's moot because since I've decided in advance that I'm not going to grant the relief the intervener wants, I'm not going to allow the intervention. And therefore, I don't actually have to decide that I'm not going to grant the relief the intervener wants. That, in addition to being circular, is a means of just saying if I don't like what the intervener is asking, just universally, then it's moot. And that can't conceivably be right, can it? Your Honor, I understand and respect your position. I think there are two points to be made here. In the three cases that are currently here for appeal, we have disclaimed the fees. But before you get there, you were starting to say that whatever consolidation happened in the district court happened after the notices of appeal were filed in these three cases or not? Your Honor, what happened last summer were that the individual cases were dismissed. Then Mr. Frank filed his appeals in the individual actions. So there hadn't been any consolidation yet then? No, Your Honor. And so when we went before Judge Durkin. So these really were three separate cases, and there were three other cases still before Judge Durkin, who had managed to get the executive committee. Okay. By the time the district judge denied intervention in house, had the consolidation happened? And that's the most recent intervention, correct, Your Honor? Yes. So when he denies and says you can participate as amicus curiae, what had been consolidated by then and on what basis? Yes. So in the house case where he has denied the intervention, my understanding is that that is just on behalf of the three cases who still currently have pending fee claims. Are they consolidated? What is the timing of the order in house with respect to the order consolidating the cases? The order consolidating the cases was a procedural order Judge Durkin put into place. When? Last December, December of 2017. When was intervention denied in house? Intervention was denied in house this year, later this summer. So the intervention was denied after the consolidation order in house. Your Honor, that's correct. But. That makes house look even more like the appeal we should be hearing. And, Your Honor, I would agree with you there, because I think there are several other procedural things that occurred this spring with respect to what we are calling the disclaim fee waiver cases, and most importantly was this May 2 hearing that Judge Durkin held to determine what was going to happen with all of the actions. At the May 2 hearing, and this is the hearing that we are saying that at this particular hearing, this is when Judge Durkin deemed the disclaimed fee waiver cases as moot. This hearing was conducted solely for the purpose of determining what the impact and fact of the waiver on those cases was. So you're saying that it wasn't really, I don't want to give you an injunction, therefore your case is moot, which would, of course, mean every case where you lost in the merits was moot. It's because you said you weren't going to take the fees. Correct. So there was no possibility of fees on the table anymore. That's correct. But there was certainly the possibility of an injunction. Right. If the entertainer says, I want an injunction against the public purchase and sale of Beanie Babies, which has nothing to do with this case, that wouldn't be moot. The judge would deny it, but that would be a decision on the merits or for lack of standing. But the judge's statement, this case has nothing to do with Beanie Babies, I'm not going to grant that injunction, wouldn't make it moot. Your Honor, our position, though, is with respect to the three cases that are currently before you, Mr. Frank's counsel did nothing to preserve that right to appeal in the disclaimed fee waiver cases. That's a different question, whether he has waived something, from the question whether the case is moot. And I think we need to decide each thing independently. So the first thing I would ask that the Court would consider in deciding is whether the portion of the case where Mr. Frank was wanting us to disgorge our portion of the fee and the three actions that are currently before Your Honor's disclaimed portion of that fee, whether those cases are moot for that purpose. And I would argue that they are. Mr. Frank has said continually that he's preserved his appeal with respect to the disclaimed fee waiver cases. But that May 2nd hearing before Judge Durkin, Mr. Frank's counsel, who was Mr. Bednar's at the time, was very, very clear. The sole purpose of that May 2nd hearing, as I've indicated, was to determine what all of the parties were going to do with the fee. This included the three cases that are still currently pending before the District Court. And that hearing was scheduled days in advance, and the District Court pointedly asked Mr. Frank's lawyer what his view was with respect to the three specific actions that had disclaimed a fee. Mr. Frank at that time did nothing to preserve his right for appealing the issue of this broad future perspective injunction. What Judge Durkin was trying to find at that hearing was... Okay, let me ask you another of the questions I asked Ms. St. John. Does Section 78U-4A6, the provision in the Securities Law, deal with suits filed as class actions but not yet certified as class actions? No, Your Honor. It's my understanding that the PSLRA by its own terms... It's your understanding based on what? Based on the statutory interpretation that specifically says... Well, statutory interpretation is done by real live people. So is there some decision you're relying on, or are you relying on the uninterpreted text? Because I think the text is ambiguous. Your Honor, there is not a particular decision. I think this is an issue that is currently before several District Courts but where there has not been guidance. So it's... Nobody's talked about this yet. Okay. Your Honor, there are several grounds here that the Court should consider in determining whether or not the District Court was appropriate in its denial of the motion to intervene. First, as I was just discussing, is that factual ground that Mr. Frank essentially conceded that part of the relief he was seeking had been mooted. If I could talk with respect to mootness about this prospective injunctive relief that he's seeking... He's looking for something, as the Court has recognized today, that's hypothetical, it's future... That's probably not a mootness problem, though. That sounds more like ripeness or some other doctrine that says whatever harm might occur to you someday hasn't gelled yet. It's a little bit more like lions. Your Honor, while I would agree with you, if the underlying... One of the underlying claims, though, the disgorgement of the fees in this particular Acorn case, that was the live case in controversy that was before the Court. Now, I understand that. And I also have mused that if the problem that he has is these fees and he's constantly able to jump in and get lawyers to disclaim the fees, sooner or later the tactic isn't going to be so attractive. But that being said, at the time he buys the shares and commences this litigation, it was a live merger possibility. It looked like the same pattern was happening. And he might have thought that you needed the injunction. He didn't want you to get your share of this $340 or whatever it was without judicial review. Yes, Your Honor, I think that's entirely what Mr. Frank thought. But whether that was a proper basis for intervening under Rule 24, I think it certainly was not. So there we need to ask, maybe it's a standing question. Why does a shareholder have standing to go forward? Now, Ms. St. John, I think, cited at least one case saying shareholders do have an individual interest, not a derivative interest from the corporation. Ms. St. John was also discussing the notion of a breach of fiduciary duty by plaintiff's counsel. And plaintiff's counsel certainly admit that we have a fiduciary duty to the putative class. But our duty to the putative class is to act not in a manner that would harm or hinder any claims. And in this case, we breached no duty because we did not harm or hinder any claims in the underlying litigation. After the mooting disclosures were made and we made dismissals of our cases, those dismissals were all without prejudice. So Mr. Frank or any other ACORN stockholder is free to bring whatever claims arising out of the merger, out of the litigation that they choose, because none of their claims were compromised. So your position, the claims are dismissed without prejudice and you're not taking any money. So you've held up maybe the merger for a little while. Any problem there? Your Honor, arguably we did not hold up the merger. What occurred in this particular instance was that we filed our action, defendants made the supplemental disclosures in response to briefing in our complaints, and then our cases were dismissed in July. This merger didn't fall apart until December of last year. That was when ACORN and Fresenius terminated the merger. And our cases had been dismissed. There's no longer a case or controversy then? There is no longer a case or controversy, no, Your Honor, and especially with respect to the cases here where we've disclaimed any particular fee. So I think that's another point to be made here. In order for him to intervene, there has to be a live case in controversy. He has to have a direct interest in the litigation. There is no live case or controversy here anymore. But you would agree there is in-house? I would, I would, Your Honor. And I think that goes and contravenes with their argument that the mootness doctrine exception applies to our disclaimed fee cases here. They're capable of repetition yet evading review. Exactly, because it's being reviewed right now by the district court. Despite the fact that the district court has denied the motion for intervention, they're still permitting Mr. Frank to intervene. The district court, in its opinion, Well, he's an amicus. He doesn't have any rights of a party. Correct, but his views are still being expressed. And as the panel this morning has recognized, this type of litigation by Mr. Frank may not be the appropriate vehicle for him to have his concerns addressed. The other thing I want to talk about is that the district court had said, with respect to the mootness doctrine, that Mr. Frank can intervene in future cases if he so chooses. And I think that's something he can do. Under the PSLRA, with respect to these federal class claims, plaintiffs' counsel are required to give notice of the class action, which was done here. And the defendant corporations are also required to disclose the litigation in some sort of SEC filing, which was done here also. The last thing I want to discuss that we haven't talked about today is the fact that Mr. Frank really does not have standing to pursue these claims. In order to intervene in litigation, an intervener has to have Article III standing. And the harm alleged by Mr. Frank is to Acorn, not to him. Mr. Frank was a stockholder of Acorn. Mr. Frank keeps insisting, no, it is my harm because you owed a fiduciary duty to me that you breached. And as we've just discussed, Your Honor. Which is maybe not measured by the $340,000 of fees. And yes, Your Honor, as we've just discussed, we breached no duty. We compromised no claims. We hindered no claims. But that, of course, is the merits. Right? If there's been no breach of duty, that's a reason why you should win on the merits. Not a reason why the request to intervene is moot. Correct, Your Honor. I would say that does go to the merits. And I think the arguments are getting conflated here, where we're looking at merits arguments regarding standing and his right to intervene and looking at this as being moot. He doesn't have standing here, you claim, but he would in the future have standing. No, he's not. Could in the future have standing. If it were derivative standing, Your Honor, arguably he would have standing. But he would not have standing to pursue this type of claim directly before the court. And so I was just going to clarify, there's a little bit of back and forth. He says he's trying to intervene either of right or permissively. And I think I recall in your brief you said it was just a 24A. Yes, Your Honor. We've just analyzed this and we believe the only grounds he's given for intervention have been intervention as a matter of right. Your Honors, clearly the motion to intervene was dismissed properly by the district court here. If we're not for the right reasons, you have to add. Appellees respectfully request that the judgment be affirmed. Thank you for your time. Thank you very much. Ms. St. John. We're just asking for a chance to brief the merits of the injunctive relief that Frank seeks. It's clear that the district court committed an error of law in denying his motion to intervene as moot. It's implausible to suggest that he could simply intervene in another case. In this case alone, we've violated it. But he's done it in-house. He's done it. Why is that implausible since it has its own docket number in the Seventh Circuit? Well, it shows that he wasn't even allowed to intervene there, even where... But he now will have full review of that question and maybe that was correct and maybe it wasn't, but we will see. Well, I think it shows that this is a game of whack-a-mole and even where... But it's not whack-a-mole. If we decide that his motion to intervene was erroneously denied, then that becomes the law of the house case and contributes to the understanding of how this works in our circuit. If we decide that for whatever reason it was correctly granted, then that's a merits ruling too. And maybe the reasons will shed light on where you can intervene in the future. That's true, but I think... I don't think that's whack-a-mole. I think it could be wrong in both. I think it can be wrong in both this case and that case. I think we've shown why he should at least have an opportunity to argue the merits of his case before the district court. And I believe they're wrong that the fiduciary duty simply requires them not to impair the claims of class members. They have a duty of loyalty to class members. And this circuit has held that leveraging the class action device for their own benefit, as they did here, is a breach of that duty. Unless there are further questions, I thank you for your... All right. Thank you very much. Thank you. Thanks as well to Ms. Trippity. And we will take the case under advisement.